**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TYRONE WILFONG,                          :
                                         :      Civil Action No. 06-2932 (DRD)
                    Plaintiff,           :
                                         :
          v.                             :      **OPINION**
                                         :
MORRIS COUNTY CORRECTIONAL               :
FACILITY, et al.,                        :
                                         :
                    Defendants.          :

**APPEARANCES:**

Plaintiff pro se
Tyrone Wilfong
Morris County Correctional Facility
43 John Street
Morristown, NJ 07960-4237

**DEBEVOISE**, District Judge

     Plaintiff Tyrone Wilfong, a prisoner confined at Morris
County Correctional Facility in Morristown, New Jersey, seeks to
bring this action in forma pauperis pursuant to 42 U.S.C. § 1983,
alleging violations of his constitutional rights.  Based on his
affidavit of indigence and the absence of three qualifying
dismissals within 28 U.S.C. §1915(g), the Court will grant
Plaintiff's application to proceed in forma pauperis pursuant to
28 U.S.C. § 1915(a) and order the Clerk of the Court to file the
Complaint.

     At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff[1] alleges that he has experienced long-term pain in his back and kidneys, that has begun radiating down his leg.  In addition, Plaintiff alleges that he has a large lump on his head and blurred vision.  Plaintiff claims that he has received no meaningful medical attention for these conditions.

Plaintiff alleges that for all inmates in Prehearing Detention and Disciplinary Detention, each inmate's solitary cell

---

[1] Plaintiff does not state whether he is a pre-trial detainee or a convicted and sentenced prisoner.  Pretrial detainees and convicted but unsentenced prisoners are protected by the Due Process Clause of the Fourteenth Amendment; convicted and sentenced prisoners are protected by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  With respect to medical care and prison conditions, however, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale, 318 F.3d at 581-82; Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).  For the sake of convenience, the Court will analyze Plaintiff's medical care and conditions-of-confinement claims under the Eighth Amendment standard.

is searched on a daily basis and that each inmate is strip
searched, in the presence of female officers, on recorded camera,
on a daily basis.  He was subjected to these searches from August
22, 2005 through September 6, 2005.  Plaintiff contends that the
inmates do not leave their cells for recreation or meals and that
these searches are conducted solely to punish and harass the
inmates.

Plaintiff contends that he is denied access to legal
telephone calls.

Plaintiff contends that all mail is held from Friday until
at least Monday and that mail is sometimes held in excess of 72
hours.  Plaintiff also alleges that legal mail is searched
outside the presence of the inmate.

Plaintiff alleges that inmates are provided with used
footwear that is old and dirty and that inmates are issued dirty
mattresses.

Plaintiff names as Defendants the Morris County Correctional
Facility, Sheriff Edward V. Rochfort, Chief Ralph McGrane, Warden
Frank Corrente, and various John Doe and Jane Roe defendants.  He
seeks declaratory and injunctive relief and compensatory and
punitive damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,
certain in forma pauperis and prisoner actions that are

3

frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can

4

prove no set of facts in support of his claim which would entitle
him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d
371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34
(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane
v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg
County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the

5

alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or
her official capacity "generally represent[s] only another way of

6

pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  ANALYSIS

A.  Strip Searches/Cell Searches

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  The Eighth Amendment protects prisoners against calculated harassment.  See Hudson v. Palmer, 468 U.S. 517, 530 (1984).  As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Id. at 528.

With regard to the alleged strip search, in Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the

7

constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body. 441 U.S. 520 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest). This reasonableness standard requires:

> a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Wolfish, 441 U.S. at 559.

Similarly, with respect to the daily cell searches, searches conducted as "calculated harassment unrelated to prison needs" may violate the Eighth Amendment. Hudson v. Palmer, 468 U.S. at 530. See also Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993). Numerous searches conducted within a short period of time may suggest intent to harass an inmate. See Scher v. Engelke, 943 F.2d 921, 923-24 (8th Cir. 1991) (finding that ten searches of an inmate's cell within a nineteen-day period constituted "cruel and unusual punishment"), cert. denied, 503 U.S. 952 (1992). However, repetitive searches which may seem to be harassment to the inmate do not violate the Eighth Amendment if each search is conducted for a legitimate purpose. See Proudfoot v. Williams, 803 F.Supp. 1048 (E.D. Pa. 1992)

8

(finding that three searches within fourteen days did not violate
Eighth Amendment when each search was made for a legitimate
purpose).

Here, Plaintiff alleges that the searches were conducted
solely to harass and for no legitimate purpose.  Plaintiff states
an Eighth Amendment claim sufficient to avoid dismissal at this
preliminary stage of the litigation.[2]

B.   Medical Care

The Eighth Amendment proscription against cruel and unusual
punishment requires that prison officials provide inmates with
adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04
(1976).  In order to set forth a cognizable claim for a violation
of his right to adequate medical care, an inmate must allege: (1)
a serious medical need; and (2) behavior on the part of prison

---

[2] Similarly, to the extent Plaintiff is a pre-trial detainee
or unsentenced prisoner, the Complaint is sufficient to state a
Fourteenth Amendment due process claim for punishment without a
legitimate penological purpose.  Pre-trial detainees and
convicted but unsentenced prisoners retain liberty interests
firmly grounded in the Due Process Clause of the Fourteenth
Amendment.  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005);
Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of
whether such a detainee or unsentenced prisoner has been deprived
of liberty without due process is governed by the standards set
out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).
Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.
Plaintiff's allegations here, that strip searches and cell
searches are conducted, as a matter of policy, for the purpose of
harassment, describes conditions that amount to "punishment" of
the detainee prior to an adjudication of guilt, contrary to the
rule set forth in Bell v. Wolfish.

officials that constitutes deliberate indifference to that need.
Id. at 106.

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9
(1992).  Serious medical needs include those that have been
diagnosed by a physician as requiring treatment or that are so
obvious that a lay person would recognize the necessity for
doctor's attention, and those conditions which, if untreated,
would result in lifelong handicap or permanent loss.  Monmouth
County Correctional Institutional Inmates v. Lanzaro, 834 F.2d
326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  "Deliberate indifference" is more than
mere malpractice or negligence; it is a state of mind equivalent
to reckless disregard of a known risk of harm.  Farmer v.
Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's
subjective dissatisfaction with his medical care does not in
itself indicate deliberate indifference.  Andrews v. Camden
County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis,

10

551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for

serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, Plaintiff alleges both serious medical conditions and deliberate refusal to provide care. The allegations state a claim sufficient to avoid dismissal at this stage of the litigation.

C.   Legal Communications

Plaintiff alleges that he is not allowed legal telephone calls, that his legal mail is inspected outside of his presence, and that delivery of his legal mail routinely is delayed for several days.[3]  Plaintiff does not explain what he means by "legal" telephone calls or mail.

Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment.

---

[3] To the extent Plaintiff complains of delays of only 72 hours in delivery of non-legal mail, this Court can discern no violation with his First Amendment rights.  "In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication).  See also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates).  Cf., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation").  Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), supplemented and finalized, 457 F.Supp. 984 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).  The type of short-term delay described here, however, particularly on holidays and weekends, is not unreasonable and does not state a claim.

13

See Inmates of Allegheny County Jail v. Wecht, 565 F.Supp. 1278, 1284 (E.D. Pa. 1983); Owens-El v. Robinson, 442 F.Supp. 1368, 1386 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979). Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited. Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992). Prison officials can limit communications, particularly telephone communications, to ensure safety, security, and the orderly operations of their institution. Griffin-El v. MCI Telecommunications Corp., 835 F.Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994). In particular, courts have approved the installation of collect-only telephone systems and, for non-legal calls, some degree of monitoring to control instances of inmate telephone fraud, harassment of crime victims, or disputes among inmates over telephone use. See, e.g., Wooden v. Norris, 637 F.Supp. 543 (M.D. Tenn. 1986) (installation of coinless telephones justified given evidence that prior coin-operated system led to fraudulent billing, vandalism, inmate calls to victims of their crimes, and illicit trade). See also Newkirk v. Sheers, 834 F.Supp. 772, 792 (E.D. Pa. 1993).

Numerous and sometimes stringent restrictions on personal telephone calls by inmates have been upheld as constitutional. Most of these restrictions involve limits on the numbers of calls

14

permitted per week, limits on what persons can be called, and
time limits on individual calls.  But see Johnson v. Galli, 596
F.Supp. 135 (D. Nev. 1984) (limitation to one call per week,
including both personal and legal uses of telephone, unreasonable
and in violation of First Amendment).  Detainees may be limited
to one monitored personal telephone call every other day.  Martin
v. Tyson, 845 F.2d 1451 (7th Cir.), cert. denied, 488 U.S. 863
(1988).

     Were this claim of interference with legal communications
one only of denial of legal telephone calls, the Complaint might
fail to state a claim.  Here, however, Plaintiff also alleges
that his legal mail is opened outside of his presence.  These
additional allegations suggest a claim of denial of access to the
courts and interference with the Sixth Amendment right to
counsel.

     The constitutional right of access to the courts is an
aspect of the First Amendment right to petition the government
for redress of grievances.  Bill Johnson's Restaurants, Inc. v.
NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  Procunier v.
Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,

15

Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also

Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)

(chronicling various constitutional sources of the right of

access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme

Court held that "the fundamental constitutional right of access

to the courts requires prison authorities to assist inmates in

the preparation and filing of meaningful legal papers by

providing prisoners with adequate law libraries or adequate

assistance from persons trained in the law."  The right of access

to the courts is not, however, unlimited.  "The tools [that

Bounds] requires to be provided are those that the inmates need

in order to attack their sentences, directly or collaterally, and

in order to challenge the conditions of their confinement.

Impairment of any other litigating capacity is simply one of the

incidental (and perfectly constitutional) consequences of

conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355

(1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of

access must show that prison officials caused him past or

imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3

(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

There is no "abstract, freestanding right to a law library or

legal assistance, [and] an inmate cannot establish relevant

actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

    In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or

photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

The Court of Appeals for the Third Circuit held recently that New Jersey prison regulations permitting the opening of legal mail outside an inmate's presence, to protect the health and safety of staff from potential anthrax exposure, impinged upon inmates' First Amendment rights.  Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).  A prisoner need not establish any consequential injury-in-fact to state such a First Amendment claim.  Id. at 358.

Moreover, in connection with a pending criminal matter, an accused has the right under the Sixth Amendment to the assistance of counsel.  See, e.g., Aswegan v. Henry, 981 F.3d 313 (8th Cir. 1992) (prisoners have to right to "any particular means of access"); Williams v. ICC Committee, 812 F.Supp. 1029 (N.D. Cal. 1992) (denial of legal telephone calls amounts to a constitutional violation only when prisoner has no access to attorney by mail or through visits).

Because of the combination of alleged deprivations, this Court will permit the claim of interference with legal communications to proceed.

D.   <u>Conditions of Confinement</u>

Plaintiff complains that he has been issued used and dirty footwear and an unsanitized mattress.

The Eighth Amendment proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Id.</u> at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Helling v. McKinney</u>, 509 U.S. at 32 (quoting <u>Rhodes</u>, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent

to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Whether analyzed under the Eighth Amendment standard or the Fourteenth Amendment "punishment" standard, these conditions are insufficient to state a claim.

20

V.   <u>CONCLUSION</u>

For the reasons set forth above, the claims related to delay of non-legal mail and unsanitized footwear and mattresses will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  All other claims will be permitted to proceed.  An appropriate order follows.

Dickinson R. Debevoise
United States District Judge

Dated: Nov. 20, 2006

21